UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Level 12 Productions, LLC,<br>Plaintiff,<br>v.<br>Grabien Inc.,<br>Defendant. | Case No:<br>**COMPLAINT**<br>JURY TRIAL DEMANDED |

Plaintiff Level 12 Productions, LLC ("*Plaintiff*"), by and through its undersigned counsel, for its Complaint against defendant Grabien Inc. ("*Defendant*") states and alleges as follows:

## INTRODUCTION

1. This action seeks to recover damages for copyright infringement under the Copyright Act, 17 U.S.C. §101 *et seq*.

2. Brendan Gutenschwager ("*Gutenschwager*") created a video of protesters outside the Israeli Consulate in New York ("*Video 1*") and a video of protesters in front of the Radio City Music Hall in New York City ("*Video 2*") in which Plaintiff owns the copyrights by written assignment. (Hereinafter referred to collectively as the *"Videos").*

3. Defendant owns and operates websites at http://grabien.com ("*Website 1*"), and at http://news.grabien.com ("*Website 2*"). (Hereinafter referred to collectively as the *"Websites").*

4. Defendant owns and operates a social media account on X known as GrabienMedia (the "*Account*").

5. Defendant, without authorization, reproduced, distributed, and publicly displayed the Videos in connection with its commercial activities and engaged in this misconduct knowingly and in violation of the United States copyright laws.

## PARTIES

6. Plaintiff is a New York limited liability company and maintains a principal place



SLG SANDERS · LAW GROUP ·

of business in Wayne County, Michigan.

7. Defendant is a Delaware corporation which, upon information and belief, maintains a place of business at 257 Grand Street #1113, Brooklyn, in Kings County, New York, the address Defendant publishes as its address for written correspondence and consumer requests.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over the federal copyright infringement claims pursuant to 28 U.S.C. §1338(a) and 28 U.S.C. §1331.

9. This Court has personal jurisdiction over Defendant pursuant to N.Y. C.P.L.R. § 302(a)(1) because Defendant transacts business in New York and contracts to supply services in New York, and Plaintiff's claims arise from that business.

10. Upon information and belief, Defendant maintains a place of business in Brooklyn, New York, publishes that address as its address for correspondence, and sells subscriptions to and downloads from its clip database to radio, television, and online news outlets located in New York. The Videos depict events in New York City, and Defendant offered clips of them for sale to its customers, including, upon information and belief, customers in New York.

11. This Court also has personal jurisdiction over Defendant pursuant to N.Y. C.P.L.R. § 302(a)(3)(ii). Defendant committed tortious acts outside New York that caused injury to Plaintiff within New York: Plaintiff is a New York limited liability company, the Videos were created and first published in New York, and Defendant's distribution and sale of the Videos usurped the market for licensing footage of New York news events. Defendant expected or reasonably should have expected its conduct to have consequences in New York, and Defendant derives substantial revenue from interstate and international commerce.

12. The exercise of personal jurisdiction over Defendant comports with due process because Defendant purposefully availed itself of the New York market by holding out a New York address to the public, by selecting, publishing, and selling footage of New York events, and, upon information and belief, by marketing its services to New York-based news organizations.

13. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(a)

SLG SANDERS · LAW GROUP ·

because Defendant may be found in this District, regularly conducts business in this District, and a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this District, including the unauthorized reproduction, display, distribution, and/or exploitation of Plaintiff's copyrighted work.

## FACTS COMMON TO ALL CLAIMS

### A. Plaintiff's Copyright Ownership

14. Plaintiff is a professional videography company whose work has been widely published by newspapers, media organizations, editorial publications, digital-media companies, and news outlets.

15. Plaintiff is Gutenschwager's production company.

16. Gutenschwager is an independent video journalist who, since 2020, has documented protests, political rallies, civil unrest, and breaking news events across the United States, frequently from the front lines of the events he covers.

17. Gutenschwager's footage has been licensed to and broadcast by major national news networks and widely republished by digital-media outlets, and he has built a large public following on the social media accounts through which he first publishes much of his work.

18. Plaintiff has devoted substantial time, skill, effort, and expense to developing its videography business and creating a portfolio of original Videos.

19. Plaintiff's Videos are valuable intellectual property assets that are commercially licensed to publishers, media outlets, websites, businesses, and other third parties for authorized use in both digital and print media.

20. Gutenschwager is the author of numerous original video works protected under the Copyright Act, including the Videos that are the subject of this action.

21. Plaintiff maintains exclusive rights under the Copyright Act, including the rights to reproduce, distribute, license, publicly display, and otherwise exploit its copyrighted Videos.

22. Plaintiff derives income from the licensing and authorized use of its copyrighted

works and maintains exclusive rights in the works it owns pursuant to the Copyright Act.

23. Plaintiff relies upon licensing revenue derived from the authorized use of its Videos and actively protects its copyrighted works against unauthorized reproduction, distribution, and display. Unauthorized use of Plaintiff's Videos deprives Plaintiff of licensing income, diminishes the value of its copyrighted works, and interferes with the market for authorized licenses.

24. Plaintiff has obtained active and valid copyright registrations from the United States Copyright Office (the "*USCO*") which cover many of Plaintiff's Videos while many others are the subject of pending copyright applications.

25. Plaintiff regularly licenses Plaintiff's Videos to media outlets, brands, and commercial entities for a fee.

26. Plaintiff's Videos are original, creative works in which Plaintiff owns protectable copyright interests.

27. On October 8, 2023, Gutenschwager first published Video 1. A screengrab of Video 1 is attached hereto as Exhibit 1.

28. On October 18, 2023, Video 1 was registered by the USCO under Registration No. PA 2-441-811.

29. On March 28, 2024, Gutenschwager first published Video 2. A screengrab of Video 2 is attached hereto as Exhibit 1.

30. On April 23, 2024, Video 2 was registered by the USCO under Registration No. PA 2-470-069.

31. In creating the Videos, Gutenschwager personally selected the subject matter, timing, lighting, angle, perspective, depth, lens and camera equipment used to capture the video recordings and made each and every artistic determination necessary for the creation of the works.

32. Gutenschwager created the Videos with the intention of their being used commercially and for the purpose of display and/or public distribution.

33. Plaintiff acquired the rights in and to the Videos by way of a written assignment, which conveyed to Plaintiff all right, title, and interest in the Videos, including the right to sue for



SLG SANDERS LAW GROUP

and recover damages for past infringements.

**B. <u>Defendant's Infringing Activity</u>**

34. Defendant is the registered owner of the Websites and of the Account and is responsible for its content.

35. Defendant is the operator of the Websites and of the Account and is responsible for its content.

36. The Websites and the Account are part of and used to advance Defendant's commercial enterprise.

37. The Websites are monetized in that Defendant sells subscriptions to, and per-file downloads, embed codes, and customized edits of, the news audio and video clips hosted in its clip database to radio and television producers, online news outlets, public relations firms, and other media customers, and Defendant profits from these activities.

38. Defendant holds itself out as an online marketplace for professionally edited news multimedia and charges its customers for each video clip downloaded from its database. Defendant pays the contributors who supply clips a commission on each sale.

39. Defendant's product is news video itself. Upon information and belief, Defendant made the Videos available to its paying customers for download, embedding, and re-editing, and thereby sold access to Plaintiff's Videos to the same news organizations and media outlets that make up Plaintiff's licensing market.

40. Defendant does not license the clips it sells. Its published terms tell customers that any license must be obtained from the content's creator. Defendant thus profits from distributing third-party news footage while disclaiming any responsibility for licensing it.

41. Defendant also maintains licensing arrangements with commercial image and video providers, including Getty Images, through which it offers licensed editorial video to its customers. Defendant therefore knows that news video is licensed content with commercial value, and knows how to obtain a license when it chooses to.

42. Upon information and belief, the Websites and the Account form part of



SLG SANDERS LAW GROUP

Defendant's commercial enterprise and are used to attract potential customers, promote Defendant's services, increase public visibility, generate business opportunities, and enhance Defendant's brand recognition.

43. Upon information and belief, Defendant's business model depends in substantial part upon the publication, promotion, and distribution of visual-media content through the Websites and the Account in order to attract audience attention, increase engagement, enhance brand visibility, expand audience reach, promote products and services, and generate commercial value.

44. Upon information and belief, Defendant is a sophisticated corporation operating in an industry in which the use of professional Videos and copyrighted content is prevalent.

45. Upon information and belief, Defendant knew or should have known that the Videos were protected by copyright, including because the Videos were of professional quality and distributed through commercial channels. Despite this, Defendant used the Videos without seeking permission or obtaining a license.

46. Upon information and belief, Defendant's personnel have significant experience in copyright matters and are familiar with industry practices requiring that Videos used in commercial content, advertising, marketing materials, publications, and social-media posts be properly licensed.

47. Upon information and belief, Defendant has not implemented adequate internal policies to verify copyright ownership before content use, indicating a gross negligence in legal compliance, which is essential for a company with Defendant's reach, capabilities, and level of sophistication.

48. Upon information and belief, Defendant's internal policies, if any, are either not designed to verify copyright ownership before content use or are systematically ignored, indicating a willful, recurring disregard for copyright compliance.

49. Defendant has been sued for copyright infringement before over the same conduct alleged here. In *Kimmel v. Grabien Inc.*, No. 1:22-cv-01652 (E.D.N.Y. filed Mar. 25, 2022), a



SLG SANDERS LAW GROUP

videographer alleged that Defendant copied, stored, displayed, and offered for sale on the Websites a news video it had not licensed. Defendant has therefore been on notice since at least 2022 that hosting and selling third-party news video without the owner's authorization exposes it to liability for copyright infringement.

50. In its answer in that action, Defendant admitted that it was not registered with the USCO pursuant to 17 U.S.C. §512. Upon information and belief, Defendant had not designated an agent with the USCO under 17 U.S.C. §512(c)(2) at the time of the Infringements.

51. Defendant's failure to adopt or effectively enforce internal copyright policies, if any, indicates *de facto* willful infringement.

52. On or about October 9, 2023, without permission or authorization from Plaintiff, Defendant willfully and volitionally reproduced and publicly displayed Video 1 on the Websites as part of on-line posts at URLs:

- https://news.grabien.com/story/pro-palestinian-protester-in-nyc-describes-israel-rave-attack-the-resi ("*Infringement 1*")
- https://grabien.com/file?id=2123943 ("*Infringement 2*")
- https://grabien.com/story?id=442953 ("*Infringement 3*")

Copies of screengrabs depicting Infringements 1-3 are attached hereto as Exhibit 2.

53. Plaintiff first observed Infringements 1-3 on December 13, 2023.

54. On or about October 9, 2023, without permission or authorization from Plaintiff, Defendant willfully and volitionally reproduced and publicly displayed Video 1 on the Account as part of an on-line post at URL: https://x.com/grabienmedia/status/1711269545691021366?s=46 ("*Infringement 4*"). A copy of a screengrab depicting Infringement 4 is attached hereto as Exhibit 2.

55. Plaintiff first observed Infringement 4 on December 13, 2023.

56. A frame of Video 1 was willfully and volitionally reproduced and stored by Defendant as a still image at URL: https://storagealpha9.grabien.com/clipsbank/

SLG SANDERS LAW GROUP

2123/framelarge/2123943.jpg.

57. On or about March 29, 2024, without permission or authorization from Plaintiff, Defendant willfully and volitionally reproduced and publicly displayed Video 2 on the Websites as part of on-line posts at URLs: https://news.grabien.com/story/massive-anti-israel-protest-outside-nyc-biden-fundraiser ("*Infringement 5*") and https://grabien.com/file?id=2354707 ("*Infringement 6*"). Copies of screengrabs depicting Infringements 5-6 are attached hereto as Exhibit 2.

58. Plaintiff first observed Infringements 5-6 on April 2, 2024.

59. On or about March 28, 2024, without permission or authorization from Plaintiff, Defendant willfully and volitionally reproduced and publicly displayed Video 2 on the Websites as part of on-line posts at URLs: https://grabien.com/file?id=2354579 ("*Infringement 7*") and https://grabien.com/story?id=466269 ("*Infringement 8*"). Copies of screengrabs depicting Infringements 7-8 are attached hereto as Exhibit 2.

60. Plaintiff first observed Infringement 7 on April 18, 2024, and Infringement 8 on April 2, 2024. (Hereinafter the unauthorized uses set forth above are referred to as the "*Infringements*").

61. Frames of Video 2 were willfully and volitionally reproduced and stored by Defendant as still images at URLs: https://storagealpha9.grabien.com/clipsbank/2354/framelarge/2354579.jpg and https://storagealpha9.grabien.com/clipsbank/2354/framelarge/2354707.jpg.

62. The Infringements are copies or substantially similar copies of Plaintiff's Videos, including protectable elements such as composition, subject matter, timing, angle, lighting, perspective, and overall expressive content.

63. Upon information and belief, the Videos were copied and displayed by Defendant without license or permission, thereby infringing on Plaintiff's copyrights in and to the Videos.

64. The Infringements each include a URL ("*Uniform Resource Locator*") that was accessible to the public and remained available for viewing for a non-transitory period of time.



SLG SANDERS · LAW GROUP ·

65. Upon information and belief, Defendant takes an active and pervasive role in the creation, selection, acquisition, licensing, editing, publication, posting, promotion, and display of content appearing on the Websites and on the Account, including Plaintiff's Videos.

66. Defendant exercised control over the content published on its Websites and on its Account and was responsible for selecting, uploading, and displaying the Videos. Defendant used the Videos in furtherance of its commercial interests and derived financial benefit from increased user engagement, brand promotion, and/or sales.

67. Upon information and belief, Defendant directly contributes to and exercises control over the content published on the Websites and on the Account by, inter alia, utilizing employees, agents, contractors, administrators, editors, moderators, social media managers, and other representatives acting on its behalf (collectively, the "*Representatives*").

68. Upon information and belief, Defendant vested its Representatives with actual and/or apparent authority to create, select, upload, publish, edit, modify, remove, monitor, and otherwise manage content appearing on the Websites and on the Account on Defendant's behalf.

69. Upon information and belief, the Representatives acted within the course and scope of their agency, employment, contractual relationship, and/or other authorized relationship with Defendant when creating, selecting, uploading, publishing, displaying, promoting, and/or distributing the content containing Plaintiff's Videos.

70. Upon information and belief, Defendant authorized, directed, ratified, approved, and/or knowingly permitted the actions of its Representatives with respect to content appearing on the Websites and on the Account, including the content containing Plaintiff's Videos.

71. Upon information and belief, the Representatives actively reviewed, monitored, edited, managed, moderated, and otherwise exercised control over content appearing on the Websites and on the Account. As a result, Defendant had actual and/or constructive knowledge of the content published thereon, including the Infringements.

72. Upon information and belief, Defendant maintained the right and ability to supervise, control, review, approve, modify, remove, and otherwise regulate content appearing on



SLG SANDERS LAW GROUP

the Websites and on the Account and exercised such control through its Representatives acting within the course and scope of their authority.

73. Upon information and belief, the Videos were intentionally and willfully selected, published, displayed, and distributed by Defendant.

74. Upon information and belief, Defendant is not entitled to the limitations on liability set forth in 17 U.S.C. §512 because the Infringements were selected, uploaded, approved, published, and/or distributed by Defendant and/or its Representatives acting within the scope of their authority.

75. Upon information and belief, the Infringements were not posted at the direction of a "user" within the meaning of 17 U.S.C. §512(c), but instead were affirmatively selected and published by Defendant and/or its Representatives.

76. Defendant screens, curates, prices, and sells the clips in its database, receives a direct financial benefit from each sale, and has the right and ability to control what appears on the Websites. Defendant therefore cannot claim the protection of 17 U.S.C. §512(c) for the Infringements even to the extent any of them was submitted by a third-party contributor.

77. Upon information and belief, Defendant was aware of facts or circumstances from which the determination regarding the Infringements was apparent. Defendant cannot claim that it was not aware of the infringing activities, including the specific Infringements which form the basis of this complaint, since such a claim would amount to only willful blindness to the Infringements on the part of Defendant.

78. Upon information and belief, Defendant engaged in the Infringements knowingly and in violation of applicable United States copyright laws.

79. Upon information and belief, Defendant exercised editorial, managerial, and operational control over the content appearing on the Websites and on the Account.

80. Upon information and belief, Defendant has the legal right and ability to control and limit the infringing activities on its Websites and on its Account and exercised and/or had the right and ability to exercise such right.



SLG SANDERS · LAW GROUP ·

81. Upon information and belief, Defendant monitors the content on its Websites and on its Account.

82. Upon information and belief, Defendant has received a financial benefit directly attributable to the Infringements.

83. Upon information and belief, the Infringements increased engagement with the Websites and the Account and generated additional audience traffic, brand visibility, consumer interest, promotional value, and commercial value for Defendant.

84. Upon information and belief, Defendant distributed the Infringements to a broad audience through the Websites and the Account and derived commercial value from the resulting user traffic, engagement, advertising impressions, and/or promotional exposure.

85. Upon information and belief, Defendant derived commercial value from the resulting audience engagement, publicity, promotional exposure, brand visibility, audience growth, increased traffic, and related business-development opportunities associated with the Infringements.

86. Upon information and belief, Defendant at all times had the ability to stop the reproduction and display of Plaintiff's copyrighted material.

87. Defendant's use of the Videos harmed the actual market for the Videos.

88. Defendant's use of the Videos, if widespread, would harm Plaintiff's potential market for the Videos.

89. Defendant's unauthorized use usurps the market for licensed uses of the Videos and undermines Plaintiff's ability to license its works to other commercial entities.

90. On or about May 13, 2024, Plaintiff, through counsel, notified Defendant of the infringing activity described herein and demanded that Defendant cease and desist from its unauthorized use of Plaintiff's copyrighted works and compensate Plaintiff for its unauthorized use thereof.

91. Thereafter, on or about December 3, 2024, Plaintiff, through counsel, sent a follow-up communication seeking to resolve the dispute without litigation and affording Defendant an



SLG SANDERS LAW GROUP

additional opportunity to address Plaintiff's claims.

92. Despite receiving notice of Plaintiff's claims and being afforded multiple opportunities to resolve the matter amicably, Defendant failed and/or refused to adequately address Plaintiff's claims, thereby necessitating the commencement of this action.

93. Defendant continued to reproduce and publicly display Plaintiff's Videos after receiving notice of Plaintiff's claims. Infringements 1 through 3 and 5 through 8 remain publicly accessible on the Websites as of the date of this Complaint, as shown by archived captures of each made on November 2, 2026, copies of which are attached hereto as Exhibit 3. Such post-notice conduct evidences Defendant's knowledge of Plaintiff's rights and supports a finding that Defendant's infringement was knowing, intentional, and willful.

94. The commencement of this action was therefore necessary to protect Plaintiff's rights under the Copyright Act.

95. As a result of Defendant's misconduct, Plaintiff has been substantially harmed.

SLG SANDERS LAW GROUP

## FIRST CAUSE OF ACTION

***(Direct Copyright Infringement, 17 U.S.C. §501 et seq.)***

96. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs, as though set forth in full herein.

97. The Videos are original, creative works in which Plaintiff owns valid copyrights.

98. The Videos are properly registered with the USCO and Plaintiff has complied with all statutory formalities under the Copyright Act and under regulations published by the USCO.

99. Plaintiff has not granted Defendant a license or the right to use the Videos in any manner, nor has Plaintiff assigned any of its exclusive rights in the copyright to Defendant.

100. Without permission or authorization from Plaintiff and in willful violation of Plaintiff's rights under 17 U.S.C. §106, Defendant improperly and illegally copied, reproduced, distributed, adapted, and/or publicly displayed works copyrighted by Plaintiff thereby violating one of Plaintiff's exclusive rights in its copyrights.

101. Defendant's reproduction of the Videos and display of the Videos constitutes willful

copyright infringement.

102. Upon information and belief, Defendant willfully infringed upon Plaintiff's copyrighted Videos in violation of Title 17 of the U.S. Code, in that Defendant used, published, communicated, posted, publicized, and otherwise held out to the public for commercial benefit, Plaintiff's original and unique Videos without Plaintiff's consent or authority.

103. As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringements as provided by 17 U.S.C. § 504 in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendant for each copyrighted work infringed pursuant to 17 U.S.C. § 504(c).

104. As a result of the Defendant's violations of Title 17 of the U.S. Code, the court in its discretion may allow the recovery of full costs as well as reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505 from Defendant.

105. As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to injunctive relief to prevent or restrain infringement of Plaintiff's copyright pursuant to 17 U.S.C. § 502.

SLG SANDERS LAW GROUP

**<u>SECOND CAUSE OF ACTION</u>**

***(Vicarious Copyright Infringement, 17 U.S.C. §501 et seq.)***

106. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs, as though set forth in full herein.

107. To the extent any of the Infringements was uploaded to Defendant's clip database or published on the Websites by a third-party contributor, that contributor directly infringed Plaintiff's copyrights in the Videos.

108. Defendant had the right and ability to supervise and control that infringing activity, including through its screening, approval, hosting, pricing, sale, and removal of the clips in its database, and declined to exercise that right to stop the infringement of Plaintiff's Videos.

109. Defendant received a direct financial benefit from the infringing activity, including

the fees its customers paid to download, embed, and edit clips of the Videos and the subscription revenue and audience the Infringements drew to its service.

110. Defendant is therefore vicariously liable for the infringement of Plaintiff's copyrights in the Videos, and its vicarious infringement was willful.

111. As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to an award of actual damages and Defendant's profits attributable to the infringements pursuant to 17 U.S.C. § 504(b) or, at Plaintiff's election, statutory damages pursuant to 17 U.S.C. § 504(c), together with costs and reasonable attorney's fees pursuant to 17 U.S.C. § 505.

## **THIRD CAUSE OF ACTION**

***(Contributory Copyright Infringement, 17 U.S.C. §501 et seq.)***

112. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs, as though set forth in full herein.

113. Defendant knew or had reason to know of the direct infringement of Plaintiff's Videos by any third-party contributor, because Defendant's staff reviews clips submitted to its database before publishing them and because Plaintiff notified Defendant of the Infringements no later than May 13, 2024.

114. Defendant materially contributed to and induced that direct infringement by hosting, promoting, distributing, and selling copies of the Videos to its customers, and by paying contributors a commission on sales of the clips they submit.

115. Defendant is therefore contributorily liable for the infringement of Plaintiff's copyrights in the Videos, and its contributory infringement was willful.

116. As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to an award of actual damages and Defendant's profits attributable to the infringements pursuant to 17 U.S.C. § 504(b) or, at Plaintiff's election, statutory damages pursuant to 17 U.S.C. § 504(c), together with costs and reasonable attorney's fees pursuant to 17 U.S.C. § 505.

## **JURY DEMAND**

117. Plaintiff hereby demands a trial of this action by jury.



SLG SANDERS LAW GROUP

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff respectfully requests that the Court enters a judgment finding that Defendant has infringed on Plaintiff's rights to the Videos in violation of 17 U.S.C. §501 *et seq.* and therefore award damages and monetary relief as follows:

a. finding that Defendant infringed Plaintiff's copyright interest in and to the Videos by copying, reproducing, distributing, publishing, and publicly displaying it without a license or consent;

b. for an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringements as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendant for each copyrighted work infringed pursuant to 17 U.S.C. § 504(c), whichever is larger;

c. for an order pursuant to 17 U.S.C. § 502(a) enjoining Defendant from any infringing use of any of Plaintiff's works;

d. for costs of litigation and reasonable attorney's fees against Defendant pursuant to 17 U.S.C. § 505;

e. for pre-judgment interest as permitted by law; and

f. for any other relief the Court deems just and proper.

DATED: November 3, 2026

**SANDERS LAW GROUP**

By: *_/s/ Craig Sanders_*
Craig Sanders, Esq.
333 Earle Ovington Blvd, Suite 402
Uniondale, NY 11553
Tel: (516) 203-7600
Email: csanders@sanderslaw.group
File No.: 129248

*Attorneys for Plaintiff*

SLG SANDERS · LAW GROUP ·